NATIONAL ASSOCIATION OF HOME
BUILDERS OF THE UNITED
STATES, et. al., Plaintiffs,

v.

Bruce BABBITT, Secretary United
States Department of Interior,
et. al., Defendants.

Civil Action No. 95–1374(RMU).
Documents Nos. 10 and 20.

United States District Court,
District of Columbia.

Oct. 31, 1997.

Patrick J. Hurd, Keller & Heckman, Washington, DC, Glen Franklin Koontz, Washington, DC, for National Ass'n of Home Builders of U.S.

Arthur S. Garrett, III, Patrick J. Hurd, Keller & Heckman, Washington, DC, Glen

Franklin Koontz, Washington, DC, for Builder Ass'n of Texas Capitol Area.

Mark A. Brown, Samuel D. Rauch, II, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for Bruce Babbitt and Mollie Beattie.

## MEMORANDUM OPINION AND ORDER

### Granting Defendants' Motion for Summary Judgment, and Denying Plaintiffs' Motion for Partial Summary Judgment

URBINA, District Judge.

## I. INTRODUCTION

Plaintiffs, National Association of Home Builders ("NAHB")[1] and the Texas Capitol Area Builders Association ("TCBA"),[2] bring this action for declaratory and injunctive relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553, 701–706 (1995), and the Endangered Species Act ("ESA") citizen-suit provision, 16 U.S.C. §§ 1540(g) (1995). Plaintiffs challenge defendant United States Department of the Interior ("DOI") and defendant United States Fish and Wildlife Service's ("FWS") issuance of a technical correction to a final rule promulgated pursuant to the ESA without using the required APA notice and comment procedures. The present matter comes before the court on cross-motions for summary judgment raising two issues for the court's resolution. First, the court must decide whether the plaintiffs have standing to seek judicial review of the defendants' actions. Second, if the court concludes in the affirmative, the court then must determine whether the defendants erred in not using the notice and comment rulemaking procedures when issuing the technical correction.

Upon consideration of the parties' submissions, the applicable law, and the record

herein, the court concludes that the plaintiffs lack sufficient standing to bring suit against the defendants. Therefore, the court declines to reach the merits of the second issue. As a result, the court grants the defendants' Motion for Summary Judgment and denies plaintiffs' Motion for Partial Summary Judgment.

## II. BACKGROUND

On September 16, 1988, the FWS promulgated a final rule ("1988 Final Rule")[3] pursuant to the ESA, 16 U.S.C. § 1533, which listed five cave-dwelling ("karst") invertebrate species as endangered. This list included: Bee Creek Cave Harvestman (*Texella reddelli*), Kretschmarr Cave Mold Beetle (*Texamaurops redelli*), Tooth Cave pseudo scorpion (*Microcreagris texana*), Tooth Cave spider (*Neoleptoneta myopica*), and Tooth Cave ground beetle (*Rhadine persephone*). On August 18, 1993, the FWS published a final rule in the form of a technical correction ("1993 technical correction") to the 1988 Final Rule.[4] The 1993 technical correction was published because two species, which were listed as endangered in the 1988 Final Rule, were later determined by scientific experts to actually be four distinct species of karst dwellers instead of two. The Kretschmarr Cave mold beetle was discovered to include another separate species called the Coffin Cave mold beetle (*Batriodes texanus*), and the Bee Creek Cave harvestman included a separate species called the Bone Cave harvestman (*Texella reyesi*). The FWS then listed all four species as endangered in order to "ensure that recognition and protection under the ESA ... [was] provided ..." for all four species, the Kretschmarr Cave mold beetle and the Bee Creek Cave harvestman, and the two newly identified species, the Coffin Cave mold beetle and the Bone Cave harvestman.

---

1. The NAHB is a non-profit corporation functioning as a trade association representing over 180,000 members.

2. The TCBA is an NAHB affiliate and is also a trade association that represents its members' interests.

3. 53 Fed.Reg. 36,029 (1988). The 1988 Final Rule was promulgated according to APA notice and comment rulemaking procedure, 5 U.S.C. § 553, as required by the ESA, 16 U.S.C. § 1533. Plaintiffs do not challenge the validity of the 1988 Final Rule.

4. 58 Fed.Reg. 43,818 (1993).

Plaintiffs filed this action on July 24, 1995, alleging that the defendants issued the 1993 technical correction without a notice and comment period in violation of the APA. Plaintiffs seek to enjoin the defendants from enforcing the 1993 technical correction or, in the alternative, have this court declare the 1988 Final Rule illegal and thus unenforceable.

## III. DISCUSSION

### A. Legal Standard for Summary Judgment

The court may enter summary judgment if the moving party demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When more than one party moves for summary judgment, each party must carry its own burden of proof. *United States Dep't. of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 755, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). On cross-motions for summary judgment, the court may not grant summary judgment unless one of the parties is entitled to judgment as a matter of law. *325–343 E. 56th Street Corp. v. Mobil Oil Corp.,* 906 F.Supp. 669, 674 (D.D.C.1995) (citing *Rhoads v. McFerran,* 517 F.2d 66, 67 (2d Cir.1975)). Although summary judgment motions can be employed to challenge standing, the usual burden of proof does not apply. *Colo. Manufactured Housing v. Bd. of County Com'rs,* 946 F.Supp. 1539 (D.Colo. 1996). The plaintiff retains the ultimate burden of demonstrating standing, no matter how or when the issues are raised. *Id.* Therefore, "the burden is on the plaintiff, on a motion for summary judgment, to demonstrate that standing exists." *Id.* (citing *Glover River Org. v. Dep't of Interior,* 675 F.2d 251, 254 n. 3 (10th Cir.1982)). In this case, the plaintiffs fail to carry their burden of showing that standing exists. Accordingly, the court dismisses plaintiffs' complaint for lack of standing.

### B. Standing

In a lawsuit brought pursuant to the APA, a plaintiff must satisfy both prudential[5] and constitutional[6] requirements of standing. A plaintiff bringing a case pursuant to the ESA's citizen-suit provision[7] need not satisfy the prudential zone of interests test because "*any person* may commence a civil suit" under the ESA. *Bennett v. Spear,* 520 U.S. 1154, ———–———, 117 S.Ct. 1154, 1161–62, 137 L.Ed.2d 281 (1997) (emphasis added). However, in addition to the prudential zone of interests test, a plaintiff must also satisfy the elements of constitutional standing to sue under the ESA's citizen-suit provision. *Lujan v. Defenders of Wildlife,* 504 U.S. at 560–61. This "irreducible constitutional minimum" of standing imposed by the "case" or "controversy" provision of Article III requires a plaintiff to establish three elements. *Id.* First, the plaintiff must have suffered an "injury in fact," namely an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Id.* at 560. Second, the plaintiff must show a causal connection between the injury and the defendant's conduct. Specifically, the injury must be "fairly traceable" to the challenged action of the defendant and not to an independent third party. *Id.* Finally, the plaintiff must also prove that it is "likely," as opposed to "merely speculative," that the court can provide redress for plaintiff's injury with a favorable decision of the court. *Id.* at 561. The party invoking federal jurisdiction has the burden of establishing these elements. *Id.* As such, the party cannot rely on "mere

---

**5.** The prudential limitations on federal court jurisdiction are, like the constitutional standing requirements, "judicially self-imposed limits on the exercise of federal jurisdiction." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Unlike the constitutional limitations on standing though, the prudential requirements "can be modified or abrogated by Congress." *Bennett v. Spear,* 520 U.S. at ——, 117 S.Ct. at 1161.

**6.** Though some of the elements of standing express "merely prudential considerations that are part of judicial self-government, the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

**7.** 16 U.S.C. § 1540(g).

allegations" but must set forth by affidavit or other evidence of "specific facts" that the party has standing. *Id.* When the plaintiff is "not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* at 562 (citing *Allen v. Wright,* 468 U.S. 737, 758, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). Applying the above mentioned constitutional standing requirements to this case, the court concludes that plaintiffs fail to establish any of the requirements to properly bring the current action.

### 1. Injury-in-Fact

 The plaintiffs allege that the injury they have suffered is procedural in nature, namely the lack of notice of and opportunity to comment on the 1993 technical correction.[8] A party can enforce procedural rights only so long as the procedures in question are designed to protect some "threatened concrete interest" of the party. *Lujan,* 504 U.S. at 573 n. 8. This is the ultimate basis for standing. *Id.*

In this case, plaintiffs argue that their threatened concrete interest is economic. Specifically, plaintiffs state that the use of their land has been limited and, as a result, they have lost money because the defendants listed these two additional species as endangered. As proof of economic injury, the plaintiffs provided the affidavit of Mr. Maury Hood, President of Jester Land Management Company, whose development terminated because of its potential impact on the endangered species.[9] The only species mentioned in Mr. Hood's affidavit is the Bee Creek Cave harvestman (Texella reddelli), which is one of the species already listed in the 1988 Final Rule. However, plaintiffs fail to demonstrate that their alleged injury is caused by the publication of the 1993 technical correction, as opposed to the 1988 Final Rule. The two additional species listed under the 1993

technical correction already existed under the 1988 Final Rule, but just under another name. Therefore, the termination of Mr. Hood's development does not relate to the alleged lack of notice and comment pertaining to the Coffin Cave mold beetle and the Bone Cave harvestman in the 1993 technical correction. As such, the court finds that Mr. Hood's alleged injury was not caused by the 1993 technical correction.

Moreover, it is unclear whether the 1993 technical correction has imposed additional economic burdens to plaintiffs. As a further attempt to establish injury in fact, the plaintiffs submit the affidavit of Robert Wagoner, the Vice President of Del Webb Corporation, which states that, as a result of the 1993 technical correction, Del Webb Corporation has incurred costs while developing its land.[10] It is unclear, however, whether the plaintiffs have incurred these costs because of the 1993 technical correction or because of its use of conservation efforts to entice customers to buy its property. An August 1994 corporate newsletter published by Del Webb Corporation indicates that it and other developers are not injured by the conservation measures, but they actually derive economic benefits from these measures.[11] One of the articles notes, "[a]fter all, our surveys of customers tell us that the natural beauty of the Hill Country is key to their interest in living here."[12] The article also states that a *"[p]ortion of [Del Webb's] master plan will address concerns including conservation of water, pollution abatement, protection of natural features and endangered species, and archeological sites "*[13] (emphasis added). This article shows that it is unclear to what extent costs incurred by Del Webb to comply with the Endangered Species Act are also costs incurred to implement its master plan. Plaintiffs fail to differentiate between these two costs. It could be that the costs that Del Webb incurred are necessary expenses to develop its land and to attract customers to

---

8. Complaint, p. 6

9. Hood Aff. ¶ 2.

10. Wagoner Aff. ¶ 5–6.

11. Def.'s Reply ¶ 3.

12. *A Master Plan that Preserves The "Hill Country" Character,* Outlook (Del Webb Corporation), Aug. 1994.

13. *Id.*

**6**

its property and not necessarily caused by the 1993 technical correction. Thus, there is no concrete economic injury because plaintiffs cannot make mere allegations of injury but must set forth specific facts that they have been injured.[14] Accordingly, the court concludes that the plaintiffs fail to show they have suffered particularized and actual injury in fact as a result of the 1993 technical correction to have standing to pursue their claim.

### 2. · Causation

■ Even assuming *arguendo* that plaintiffs demonstrated an injury in fact, they must also prove that the alleged injury was caused by the defendants' action. This causation need not be demonstrated to a certainty. *National Wildlife Fed'n v. Hodel,* 839 F.2d 694, 705 (C.A.D.C.1988). However, the plaintiffs must show the injury is "trace[able] to the challenged action of the defendant[s], and not … from the independent action of some third party not before the court." *Simon .v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

In the present case, plaintiffs have not demonstrated how the lack of a notice and comment period prior to the release of the 1993 technical correction has caused ·their alleged injury. The 1993 technical correction does not impose additional economic burdens than those in the 1988 Final Rule. The 1988 listing alone would prevent plaintiffs from continuing with their construction and land development. Specifically, even if the Court removes two of the karst invertebrate species from the 1993 technical correction as requested by the plaintiffs, the Kretschmarr Cave mold beetle, Bee Creek Cave harvestman and three other karst invertebrate species would still remain listed as endangered species under 1988 Final Rule and thus pre-

vents any land development.[15] Accordingly, the court concludes that the plaintiffs failed to establish a sufficient causation to connect their alleged injury to the defendants' listing of two additional species in the 1993 technical correction.

### 3. Redressability

■ Finally, the redressability prong requires that it be "likely," as opposed to merely "speculative," that the injury will be redressed by the court's favorable decision. *Defenders of Wildlife,* 504 U.S. at 560. In the instant case, plaintiffs seek both declaratory and injunctive reliefs. First, plaintiffs request an order declaring the 1993 technical correction illegal and unenforceable or, alternatively, the 1988 Final Rule illegal and unenforceable. Second, plaintiffs ask for injunctive relief ordering the defendants to remove the Coffin Cave mold beetle and the Bone Cave harvestman from the list of endangered species or, alternatively, to enjoin the listing of all five species as endangered in the 1988 Final Rule.

The plaintiffs fail to demonstrate that their alleged injuries may .be redressed through ·a favorable court decision. With regard to the declaratory relief requested, the plaintiffs have failed to differentiate between the injury caused by the species listed under the 1988 Final Rule and the 1993 technical correction. It is not clear whether removing the two species from the 1993 technical correction will allow plaintiffs to develop their land because plaintiffs are still bound by the 1988 Final Rule. Furthermore, the court will not nullify the 1988 Final Rule because plaintiffs have not alleged that the 1988 Final Rule violated the APA. Therefore, the plaintiffs have not shown how a favorable decision will rectify their alleged injury.

14. *Lujan,* 504 U.S. at 561.

15. In *Williamson County Commissioners Court v. Bruce Babbitt, et al.,* the court concluded that the plaintiffs failed to specify which species alleged to be improperly listed as.endangered was responsible for the alleged injuries. Specifically, the court stated that:

> [It] is left to ponder whether the alleged harms have resulted from the two karst invertebrates

at issue in this cause or whether some other species listed as endangered in Williamson county, which plaintiff does not contest, is the responsible culprit. Therefore, the plaintiff has made no showing that any alleged injury would likely be redressed by a favorable order. Civil Action No. 94–219 at 13 (W.D.Tex. Dec. 7, 1994), *aff'd,* 68 F.3d 470 (5th Cir.1995).

 In seeking injunctive relief, plaintiffs submitted an affidavit of Steven D. Paulson to support their position that the two additional species are not endangered.[16] Mr. Paulson's affidavit challenges the substantive validity of these two species' endangered status. This challenge is not an appropriate issue for the court to decide. The appropriate procedure for such a challenge is for the plaintiffs to file a petition pursuant to 16 U.S.C. § 1533[17] to remove the endangered species.

To satisfy the redressability element, plaintiffs must "precisely trace the connection between injury and relief" because it is not the court's function to create a "plausible scenario whereby an order of this court might provide relief for injuries not specifically pleaded." Plaintiffs in the instant case have failed to satisfy this requirement. The plaintiffs fail to demonstrate that the court can provide plaintiffs with redress by removing the two species because five other karst invertebrate species remain listed as endangered species under the 1988 Final Rule. Accordingly, since plaintiffs have not offered evidence with "some specificity and concreteness"[18] how they meet the injury in fact, causation and redressability elements of the standing requirements, plaintiffs' complaint must be dismissed for lack of standing.

## IV. CONCLUSION

For the reasons stated above, the court grants the Motion for Summary Judgment filed by defendants FWS and DOI and denies plaintiffs' Motion for Partial Summary Judgment as moot.

**ORDERED** that Defendants' Motion for Summary be and is hereby **GRANTED**; it is

**FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment be and is hereby **DENIED** as moot; and it is

**ORDERED** that the above-captioned case be and is hereby **DISMISSED.**

**SO ORDERED.**

---

**16.** Plaintiffs argue, "FWS might decide that the harvestman is threatened rather than endangered or even decide that the species was neither endangered or threatened." Pl. Rep. Brief at 10.

**17.** Section 1533(b)(3)(A) states that:

To the maximum extent practicable, within 90 days after receiving the petition of an interested person under section 553(e) of Title 5 to add a species to, or to remove a species from, either lot the lists published under subsection (c) of this section, the Secretary shall make a finding as to whether the petition presents substantial or commercial information indicating that the petitioned action may be warranted. If such a petition is found to present such information, the Secretary shall promptly commence a review of the status of the species concerned. The Secretary promptly publish each finding made under this subparagraph in the Federal Register.

**18.** *McKinney v. U.S. Dept. of Treasury,* 799 F.2d 1544, 1558 (Fed.Cir.1986).